# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| OIL MOP, L.L.C. | * | CIVIL ACTION NO. 11-00089 |
| | * | |
| Plaintiff, | * | SECTION "L" |
| | * | JUDGE FALLON |
| VERSUS | * | |
| | * | MAG. DIV.  (3) |
| SUMMIT ENVIRONMENTAL SERVICES, | * | MAG. JUDGE KNOWLES |
| LLC AND AMERICAN COMMERCIAL | * | |
| LINES INC. | * | |
| Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

# ANSWER, COUNTERCLAIM AND
# THIRD-PARTY COMPLAINT OF OIL MOP, L.L.C.

**NOW INTO COURT** through undersigned counsel, comes Complaint in Intervention defendant, Oil Mop, L.L.C. ("Oil Mop"), who in answer, counterclaim and third-party complaint to the Complaint in Intervention filed herein by American Commercial Lines LLC ("ACLC") avers as follows:

## ANSWER

### I.     AFFIRMATIVE DEFENSES

1.

The Complaint in Intervention fails to state a claim upon which relief can be granted.

2.

The alleged damages stated in the Complaint in Intervention are the result of acts and/or omissions of ACLC.

1

3.

The alleged damages stated in the Complaint in Intervention are the result of acts and/or omissions of persons for whom Oil Mop is not responsible.

4.

ACLC failed to mitigate its damages.

5.

In the alternative, ACLC's claims are subject to reduction because of ACLC's own failure to take reasonable steps to mitigate its damages.

6.

In the alternative, ACLC's claims are barred by ACLC's or other parties' comparative fault.

## II.    SPECIFIC ANSWER

**AND NOW**, further answering the specific allegations of the above-referenced Complaint in Intervention, Oil Mop avers as follows:

7.

The allegations contained in paragraph 1 of the Complaint in Intervention filed herein are denied, except to admit that Oil Mop filed a Complaint against Summit Environmental Services, LLC ("SESL") and American Commercial Lines Inc. ("ACLI") on January 15, 2011, the terms of which speak for themselves.

8.

The allegations contained in paragraph 2 of the Complaint in Intervention filed herein are denied, except to admit that SESL filed an Answer on February 17, 2011, the terms of which speak for themselves.

2

9.

The allegations contained in paragraph 3 of the Complaint in Intervention filed herein are denied, except to admit that ACLI filed an Answer on February 17, 2011, the terms of which speak for themselves.

10.

The allegations contained in paragraph 4 of the Complaint in Intervention filed herein are denied, except to admit that ACLC attempted to appear in the Answer filed on February 17, 2011, the terms of which speak for themselves.

11.

The allegations contained in paragraph 5 of the Complaint in Intervention filed herein are denied, except to admit that Oil Mop moved to dismiss ACLC, the terms of which motion speak for themselves, and to admit that an order was entered, the terms of which speak for themselves.

12.

The allegations contained in paragraph 6 of the Complaint in Intervention are admitted.

13.

The allegations contained in paragraph 7 of the Complaint in Intervention are admitted.

14.

The allegations contained in paragraph 8 of the Complaint in Intervention are denied for lack of sufficient information upon which to formulate a belief.

15.

The allegations contained in paragraph 9 of the Complaint in Intervention are denied for lack of sufficient information upon which to formulate a belief.

16.

The allegations contained in paragraph 10 of the Complaint in Intervention are denied for lack of sufficient information upon which to formulate a belief.

17.

The allegations contained in paragraph 11 of the Complaint in Intervention are denied for lack of sufficient information upon which to formulate a belief.

18.

The allegations contained in paragraph 12 of the Complaint in Intervention are denied for lack of sufficient information upon which to formulate a belief.

19.

The allegations contained in paragraph 13 of the Complaint in Intervention are denied for lack of sufficient information upon which to formulate a belief.

20.

The allegations contained in paragraph 14 of the Complaint filed herein are denied for lack of sufficient information upon which to formulate a belief, except to admit that a collision occurred on or about July 23, 2008 resulting in the release of oil in the Mississippi River.

21.

The allegations contained in paragraph 15 of the Complaint in Intervention are denied.

22.

The allegations contained in paragraph 16 of the Complaint in Intervention are denied except to admit that Oil Mop signed a document that contained certain terms that were contingent upon prompt payments, the terms of which speak for themselves.

4

23.

The allegations contained in paragraph 17 of the Complaint in Intervention are denied except to admit that Oil Mop signed a document that contained certain terms that were contingent upon prompt payments, the terms of which speak for themselves.

24.

The allegations contained in paragraph 18 of the Complaint in Intervention are denied except to admit that any legitimate discrepancies that were identified in Oil Mop's invoices were quickly adjusted, and further, such adjustments were approved by impartial National Pollution Fund Center auditors.

25.

The allegations contained in paragraph 19 of the Complaint in Intervention are denied.

26.

The allegations contained in paragraph 20 of the Complaint in Intervention are denied.

27.

The allegations contained in paragraph 21 of the Complaint in Intervention are denied except to admit that any legitimate discrepancies that were identified in Oil Mop's invoices were quickly adjusted, and further, such adjustments were approved by impartial National Pollution Fund Center auditors.

28.

The allegations contained in paragraph 22 of the Complaint in Intervention are denied except to admit that any legitimate discrepancies that were identified in Oil Mop's invoices were

quickly adjusted, and further, such adjustments were approved by impartial National Pollution Fund Center auditors.

29.

The allegations contained in paragraph 23 of the Counterclaim are denied, except to admit that after being unjustly denied payment, Oil Mop was forced to proceed against the Federal Oil Spill Liability Trust Fund for payment, where its invoices were audited by impartial auditors.

30.

The allegations contained in paragraph 24 of the Complaint in Intervention are denied.

31.

The allegations contained in paragraph 25 of the Complaint in Intervention are denied for lack of sufficient information upon which to formulate a belief, except to admit that the United States filed a Complaint against ACLC, the terms of which speak for themselves.

32.

The allegations contained in paragraph 26 of the Complaint in Intervention are denied.

33.

The allegations contained in paragraph 27 of the Complaint in Intervention are denied.

34.

The allegations contained in paragraph 28 of the Complaint in Intervention are denied.

35.

The allegations contained in paragraph 29 of the Complaint in Intervention are admitted.

36.

The allegations contained in paragraph 30 of the Complaint in Intervention are denied for lack of sufficient information upon which to formulate a belief, except to admit that the United States filed a Complaint against ACLC, the terms of which speak for themselves.

37.

The allegations contained in paragraph 31 of the Complaint in Intervention are denied.

38.

The allegations contained in paragraph 32 of the Complaint in Intervention are denied.

39.

The allegations contained in paragraph 33 of the Complaint in Intervention are denied.

40.

The allegations contained in paragraph 34 of the Complaint in Intervention are denied for lack of sufficient information upon which to formulate a belief.

41.

The allegations contained in paragraph 35 of the Complaint in Intervention are denied for lack of sufficient information upon which to formulate a belief.

42.

The allegations contained in paragraph 36 of the Complaint in Intervention are denied.

43.

The allegations contained in paragraph 37 of the Complaint in Intervention are denied.

44.

The allegations contained in paragraph 38 of the Complaint in Intervention are denied.

45.

The allegations contained in paragraph 39 of the Complaint in Intervention are denied.

46.

The allegations contained in paragraph 40 of the Complaint in Intervention are denied.

47.

The allegations contained in paragraph 41 of the Complaint in Intervention are denied.

48.

The allegations contained in paragraph 42 of the Complaint in Intervention are denied.

49.

The allegations contained in paragraph 43 of the Complaint in Intervention are denied.

50.

The allegations contained in the final, unnumbered paragraph of the Complaint in Intervention comprise an additional section to which no answer is necessary, however, to the extent one may be required, are denied.

## **COUNTERCLAIM**

1.

Oil Mop, L.L.C. (hereinafter in Counterclaim "Plaintiff") is a Louisiana limited liability company with a principal place of business at 145 Keating Drive, Belle Chasse, Louisiana.

2.

On information and belief, the defendant, American Commercial Lines, LLC ("ACLC") is a Delaware corporation with a principal place of business at 1701 East Market Street, Jeffersonville, Indiana.

3.

The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 United States Code 1332.

4.

The Court further has jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1331 as the claims contained herein arise under 33 U.S.C. § 2701 et seq., the Oil Pollution Act ("OPA"). In ACLC's Complaint in Intervention, it seeks to obtain removal costs that Oil Mop received from the federal government under the Oil Pollution Act.

5.

The present action is within the admiralty jurisdiction of this court under 28 U.S.C. 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.

FACTS

6.

At all pertinent times, ACLC was the 100% owner of its subsidiary, American Commercial Barge Line, LLC (hereinafter "ACBL").

7.

At all pertinent times, ACLC and ACL Professional Services Inc. (hereinafter "APS") were 100% owned by Commercial Barge Line Company, which was wholly owned by American Commercial Lines Inc. ("ACLI").

8.

At all pertinent times, APS was the 100% owner of its subsidiary, Summit Contracting, L.L.C.

9

9.

At all pertinent times, Summit Contracting, L.L.C. was the 100% owner of its subsidiary, defendant Summit Environmental Services, LLC ("SESL").

10.

Plaintiff and defendant SESL entered into a Reciprocal Services Agreement (hereinafter "Agreement") to provide environmental services and materials to each other when needed.

11.

On information and belief, on or about July 23, 2008, a barge owned by ACLC collided with another vessel on the Mississippi River releasing oil into the waterway (the "Incident").

12.

At the time of the Incident, defendant SESL was a wholly owned subsidiary of Summit Contracting, L.L.C., which was a wholly owned subsidiary of APS, which was a wholly owned subsidiary of Commercial Barge Line Company, which was a wholly owned subsidiary of defendant ACLI, the ultimate owner of the barge.

13.

Defendant SESL engaged Plaintiff to provide services related to the Incident.

14.

The Plaintiff was also directly and separately engaged by ACBL, an ACLI and ACLC subsidiary, to perform services related to the Incident.

15.

Plaintiff provided environmental response services related to the Incident, all of which benefited defendant ACLC.

10

16.

Plaintiff regularly sent invoices for the work it performed, some of which were not paid.

17.

Since Plaintiff's invoices were not paid, Plaintiff was forced to proceed against the Federal Oil Spill Liability Trust Fund (the "Fund") for payment of its invoices.

18.

The Fund paid all of Plaintiff's invoices that were not paid, except for charges on two of the invoices that amounted to $237,484.35.  The $237,484.35 included $86,357.32 from Plaintiff's Invoice Number N0808-188, and $151,127.03 from Plaintiff's Invoice Number N0808-099.

19.

In explanation of why the Fund would not pay the $237,484.35, the National Pollution Funds Center provided that when it was auditing the Plaintiff's invoices, it had requested and reviewed certain documents from ACLC, and that it had determined that ACLC had made payment to defendant SESL's parent, Summit Contracting, L.L.C. for the $237,484.35 in question.

20.

The National Pollution Funds Center informed Plaintiff that since defendant SESL's parent Summit Contracting, L.L.C. had received payment for Plaintiff's services and materials in question, it could not pay Plaintiff.

21.

Although the defendant told Plaintiff that defendant SESL had not been paid by ACLI for Plaintiff's services and materials in question, defendant SESL had really been paid $237,484.35 for the Plaintiff's services and materials, which SESL never paid to Plaintiff.

22.

When the Plaintiff confronted the defendant with the fact that the amount had been paid to defendant SESL, but that defendant SESL had not paid the Plaintiff, the defendant admitted that it had misapplied the funds.

23.

Plaintiff demanded that defendant SESL pay it the amount that defendant SESL had received for the Plaintiff's services and materials and not paid, but defendant SESL did not pay and has knowingly and intentionally continued to refuse to pay the Plaintiff, even though SESL received the amount for the Plaintiff's services.

24.

The defendants' actions prevented the Plaintiff from being able to obtain the $237,484.35 amount from the Fund, which would have otherwise paid the money to the Plaintiff.

25.

The Plaintiff discussed matters with officer Dawn Landry ("Landry") defendant SESL's Senior Vice President and General Counsel, and made demand for the money.

26.

At the time the Plaintiff made demand for the money from Landry, Landry was also the Senior Vice President and General Counsel of ACLI, APS and Summit Contracting, LLC.

12

27.

In relation to the Incident, Plaintiff and ACBL agreed that if ACBL paid the Plaintiff's invoices promptly, that the Plaintiff would provide ACBL with certain rate concessions.

28.

Despite request, ACBL refused to promptly pay its invoices in a timely manner, and never paid many of them.

29.

As a result of its failure to promptly pay its invoices, ACBL forfeited its rate concessions, and is not entitled to any rate concessions.

30.

Since ACBL forfeited its rate concessions, ACBL was under-billed for the Plaintiff's services, and owes an additional amount of approximately $1,000,000.

COUNT I

SINGLE BUSINESS ENTERPRISE

31.

Plaintiff repeats, reiterates and incorporates Paragraphs 1 through 30 of the Counterclaim as if set forth herein at length.

32.

In addition, upon information and belief, at the date of the incident and until at least November 30, 2009, ACBL, defendant SESL and defendant ACLC were under common control and acted in an indistinguishable manner reflected in the way they integrated their resources to achieve a common business purpose.

33.

Upon information and belief, the commonalities shared by such entities were such that they acted as alter egos of one another to the extent that day-to-day activities of each company revealed actions befitting a single business entity/enterprise in pursuit of precisely the same single interest.

34.

When Dawn Landry refused to pay the Plaintiff the money that defendant SESL misapplied, she was simultaneously acting for defendant ACLI, ACLC, ACBL, APS, Summit Contracting, LLC and defendant SESL.

35.

As such, Plaintiff specifically alleges that defendant ACLC, ACBL, ACLI, APS, Summit Contracting, LLC and defendant SESL constituted a single business enterprise or were alter egos as first recognized in *Green v. Champion Ins. Co., 577 So.2d 249, 257-259 (La.App. 1st Cir.), writ denied, 580 So.2d 668 (La.1991)*.  Accordingly, they should be considered one entity and should be held liable jointly and in solido for the amount owed to and damages sustained by Plaintiff.

COUNT II

BREACH OF CONTRACT

36.

Plaintiff repeats, reiterates and incorporates Paragraphs 1 through 35 of the Counterclaim as if set forth herein at length.

14

37.

Since SESL, ACBL and ACLC were members of a single business enterprise until at least November 30, 2009, all references to them herein are intended to include all of them.

38.

From on or about July 27, 2008 through December 2008 Plaintiff performed environmental services for defendant SESL and sold materials to defendant SESL related to the incident (hereinafter "Services") pursuant to a contract (the "Agreement") between them.

39.

In executing the Agreement, defendant SESL agreed to pay Plaintiff for services rendered by Plaintiff to defendant SESL in accordance with the payment terms set forth in the Agreement.

40.

In executing the Agreement, defendant SESL agreed to pay Plaintiff interest at a rate of 1.5% per month on all overdue amounts, but defendant SESL has failed and refused to pay the accrued interest.

41.

In executing the Agreement, defendant SESL agreed to pay Plaintiff for all costs of collection, including reasonable attorney's fees, but defendant SESL has failed and refused to pay these items.

42.

The Plaintiff has performed in accordance with its agreement with defendant SESL and satisfied all conditions precedent.

43.

Despite Plaintiff's repeated demands, and despite the fact that defendant SESL has already been paid for the Plaintiff's services, defendant SESL has failed and refused to pay in full the amounts owed to Plaintiff.

44.

Defendant SESL has breached its contract with Plaintiff.

45.

Defendant SESL has failed and refused to cure its breach of the contract.

46.

As a result of defendant SESL's breach of its contract with Plaintiff, Plaintiff has suffered damages and will continue to suffer damages.

47.

Plaintiff should be awarded $237,484.35 plus interest at a rate of 1.5% per month, plus attorney fees and costs related to its agreement with SESL.

48.

From late July, 2008 through December 2008 Plaintiff performed environmental services for defendant ACBL and sold materials to defendant ACBL related to the incident (hereinafter "ACBL Services") pursuant to a contract (the "ACBL Agreement") between them.

49.

In executing the ACBL Agreement, defendant ACBL agreed to pay Plaintiff for services rendered by Plaintiff to defendant ACBL in accordance with the payment terms set forth in the

ACBL Agreement, and in exchange for rate concessions, agreed to promptly pay Oil Mop's invoices.

50.

In executing the ACBL Agreement, defendant ACBL agreed to pay Plaintiff interest at a rate of 1.5% per month on all overdue amounts.

51.

In executing the ACBL Agreement, defendant ACBL agreed to pay Plaintiff for all costs of collection, including reasonable attorney's fees.

52.

The Plaintiff has performed in accordance with its agreement with defendant ACBL and satisfied all conditions precedent.

53.

Despite Plaintiff's demands, defendant ACBL failed to promptly pay Plaintiff's invoices.

54.

Defendant ACBL breached its contract with Plaintiff and forfeited the rate concessions provided to it.

55.

As a result of defendant ACBL's breach of its contract with Plaintiff, Plaintiff has suffered damages and will continue to suffer damages.

56.

Plaintiff should be awarded the amount of the rate concessions that it provided to ACBL for prompt payment of invoices.

COUNT III

QUANTUM MERUIT & UNJUST ENRICHMENT

57.

Plaintiff repeats, reiterates and incorporates Paragraph 1 through 56 of the Counterclaim as if set forth herein at length.

58.

The services and materials provided by Plaintiff were provided at the specific request and knowledge of defendants SESL and ACBL.

59.

Defendant SESL, defendant ACLC and ACBL accepted and used the Services and materials provided by Plaintiff.

60.

The Plaintiff is entitled to the payment of the fair and reasonable value of the Services and materials it provided to ACBL, defendant SESL, and which benefitted ACLC.

61.

The fair and reasonable value of the Services and materials provided by Plaintiff but not paid for by defendant SESL or defendant ACLC is $237,484.35 excluding interest, costs and attorney fees.

62.

The fair and reasonable value of the Services and materials provided by Plaintiff but not promptly paid for by ACBL is approximately $1,000,000 more than what was invoiced to ACBL as a result of rate concessions.

18

63.

ACBL, Defendant SESL and defendant ACLC have been unjustly enriched by having received the benefit of the Services and materials of the Plaintiff while not paying the fair and reasonable amount for these Services and materials.

64.

Defendant ACLC's parent ACLI (through APS) has been unjustly enriched by receiving a purchase price for the sale of Summit Contracting, L.L.C. (which included SESL) that was inflated by $237,484.35, the amount that was shifted to SESL before the sale (thereby increasing the value of SESL by $237,484.35), but which SESL did not pay to the Plaintiff.

65.

As a result of defendant SESL and defendant ACLC's failure to pay for services and materials provided, and as a result of ACLI's receipt of an unjustly inflated purchase price, Plaintiff has suffered damages and will continue to suffer damages.

66.

Plaintiff should be awarded the amount of its rate concessions plus $237,484.35 plus interest at a rate of 1.5% per month, plus attorney fees and costs.

## **THIRD-PARTY COMPLAINT**

Parties

1.

Third-Party Plaintiff, Oil Mop, is a Louisiana limited liability company with a principal place of business at 145 Keating Drive, Belle Chasse, Louisiana.

2.

Made Third-Party Defendants herein are:

a. American Pollution Control Corporation ("APC"), who upon information and belief is a Delaware company authorized to do and doing business in the State of Louisiana with its principal place of business in Louisiana.

b. B&B Fire and Safety Services, Inc. ("BB"), who upon information and belief is a Louisiana company authorized to do and doing business in the State of Louisiana with its principal place of business in Louisiana.

c. Dillon Environmental Services, LP ("DES"), who upon information and belief is an Oklahoma company authorized to do and doing business in the State of Oklahoma with its principal place of business in Oklahoma.

d. Down South Services, L.L.C. ("DSS"), who upon information and belief is a Louisiana company authorized to do and doing business in the State of Louisiana with its principal place of business in Louisiana.

e. Eagle Supply and Manufacturing, L.P. Texas ("ESM"), who upon information and belief is a Texas company authorized to do and doing business in the State of Texas with its principal place of business in Texas.

f. Environmental Equipment, Inc. ("EEI"), who upon information and belief is a Louisiana company authorized to do and doing business in the State of Louisiana with its principal place of business in Louisiana.

20

g. Greg Gibson Trucking LLC ("GGT"), who upon information and belief is a Louisiana company authorized to do and doing business in the State of Louisiana with its principal place of business in Louisiana.

h. Industrial Cleanup, Inc. ("ICI"), who upon information and belief is a Louisiana company authorized to do and doing business in the State of Louisiana with its principal place of business in Louisiana.

i. Industrial Labor and Equipment Services LLC ("ILE"), who upon information and belief is a Louisiana company authorized to do and doing business in the State of Louisiana with its principal place of business in Louisiana.

j. Integrated Pro Services, LLC ("IPS"), who upon information and belief is a Louisiana company authorized to do and doing business in the State of Louisiana with its principal place of business in Louisiana.

k. Laville Airboats, L.L.C. ("LAL"), who upon information and belief is a Louisiana company authorized to do and doing business in the State of Louisiana with its principal place of business in Louisiana.

l. Phoenix Pollution Control & Environmental Services, Inc. ("PPC"), who upon information and belief is a Texas company authorized to do and doing business in the State of Texas with its principal place of business in Texas.

m. PSC Industrial Outsourcing, LP ("PSC"), who upon information and belief is a Delaware company authorized to do and doing business in the State of Louisiana with its principal place of business in Texas.

21

Procedure

3.

Plaintiff in the principal demand is Oil Mop.  Oil Mop filed suit against Summit Environmental Services, LLC ("SESL") and American Commercial Lines Inc. ("ACLI") for breach of contract, quantum meruit and unjust enrichment.  Those claims are set forth in the Complaint (Rec. Doc. 1), made a part hereof, in reference, as if copied in extenso, and attached as Exhibit "A."

4.

American Commercial Lines, LLC ("ACLC") filed a Complaint in Intervention (Rec. Doc. 55).  ACLC filed a Complaint in Intervention against Oil Mop, apparently for breach of contract and unjust enrichment and sought reimbursement of amounts that Oil Mop and the Third-Party Defendants were allegedly "overpaid."  Those claims are set forth in ACLC's Complaint in Intervention (Rec. Doc. 55), made a part hereof, in reference, as if copied in extenso, and attached as Exhibit "B."

5.

The claims made by ACLC are related to services, equipment and materials provided by Oil Mop and the Third-Party Defendants.

6.

Oil Mop has filed an Answer denying any and all liability to ACLC's Complaint in Intervention.

Jurisdiction

7.

The Court has jurisdiction over this Third-Party Complaint pursuant to 28 U.S.C. § 1367 as the claims contained herein are so related to the claims in the Complaint in Intervention that they form part of the same case or controversy.

8.

The Court further has jurisdiction over this Third-Party Complaint pursuant to 28 U.S.C. § 1331 as the claims contained herein arise under 33 U.S.C. § 2701 et seq., the Oil Pollution Act ("OPA").  In ACLC's counterclaim, it seeks to obtain removal costs that Oil Mop received from the federal government under OPA, and paid to the Third-Party Defendants.  Oil Mop further seeks to obtain the return of removal costs paid by the federal government under OPA from Third-Party Defendants.

9.

The present action is within the admiralty jurisdiction of this court under 28 U.S.C. 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.

General Allegations

10.

Oil Mop provided certain services, equipment and material in relation to the cleanup of an oil spill in the Mississippi River that occurred on or about July 23, 2008 (the "Job").

11.

The Job was part of a pollution recovery effort under OPA, where spill protection and recovery equipment were deployed in and around the waters of the Lower Mississippi River, near New Orleans.

12.

Oil Mop engaged the Third-Party Defendants to assist in the Job.

13.

Certain Third-Party Defendants entered into contracts with Oil Mop in which they agreed to defend, hold harmless, and indemnify Oil Mop for causes of action that might arise out of the Job.

14.

SESL did not pay Oil Mop for all of the services and materials that Oil Mop provided to it.

15.

Oil Mop sued SESL and ACLI for refusing to pay for the services and materials that Oil Mop provided.

16.

ACLC claimed in its Complaint in Intervention that it should be reimbursed for some of the amounts paid for the services provided by Oil Mop and the Third-Party Defendants.

17.

ACLC alleged in its Complaint in Intervention that certain personnel of Oil Mop and Third-Party Defendants did not provide training certificates and did not provide I-9 documents.

18.

ACLC alleged in its Complaint in Intervention that there were numerous issues with Oil Mop's invoices including apparent mistakes and/or overcharges and lack of supporting documentation.

19.

ACLC alleged in its Complaint in Intervention that Oil Mop was overpaid and/or received funds in excess of what it was justly entitled for Oil Mop's invoices, which included charges for the Third-Party Defendants.

20.

ACLC alleged in its Complaint in Intervention that in excess of $3,900,000 of charges by Oil Mop were in breach of a contract.

21.

ACLC alleged in its Complaint in Intervention that Oil Mop breached its contract by not using lawful workers and not providing properly certified workers.

Count One – Breach of Contract

22.

Oil Mop repeats, reiterates and incorporates herein by reference paragraph "1" through "22" of this Third-Party Complaint of Oil Mop, L.L.C. as if fully set forth herein at length.

23.

To the extent ACLC's allegations and legal theories (which are denied) are borne out against Oil Mop, Oil Mop's agreements with and payments to the Third-Party Defendants are implicated.

25

24.

To the extent ACLC's allegations and legal theories (which are denied) concerning Oil Mop breaching its contract by providing unqualified or unlawful or undocumented workers are borne out against Oil Mop, Oil Mop alleges that the Third-Party Defendants breached their contracts by providing unqualified or unlawful or undocumented workers.

25.

To the extent ACLC's allegations and legal theories (which are denied), concerning Oil Mop breaching its contract by providing invoices with apparent mistakes and/or overcharges and lack of supporting documentation, are borne out against Oil Mop, Oil Mop alleges that the Third-Party Defendants breached their contracts by providing invoices with apparent mistakes and/or overcharges and lack of supporting documentation.

Count Two – Unjust Enrichment

26.

Oil Mop repeats, reiterates and incorporates herein by reference paragraph "1" through "26" of this Third-Party Complaint of Oil Mop, L.L.C. as if fully set forth herein at length.

27.

To the extent ACLC's allegations and legal theories (which are denied) are borne out against Oil Mop, Oil Mop's agreements with and payments to the Third-Party Defendants are implicated.

28.

To the extent ACLC's allegations and legal theories (which are denied) concerning Oil Mop being unjustly enriched are borne out against Oil Mop, Oil Mop alleges that the Third-Party Defendants were unjustly enriched by payments they received related to the Job.

Count Three – Indemnification

29.

Oil Mop repeats, reiterates and incorporates herein by reference paragraph "1" through "29" of this Third-Party Complaint of Oil Mop, L.L.C. as if fully set forth herein at length.

30.

At all times pertinent hereto, Release Agreements between Oil Mop and DSS and IPS were in full force and effect.  Under the terms of the Release Agreements, DSS and IPS are contractually required to defend, indemnify and hold harmless Oil Mop from and against claims such as those asserted by ACLC in its Complaint in Intervention herein.  As such, DSS and IPS are contractually obligated to defend and indemnify Oil Mop under their Release Agreements with Oil Mop.

31.

The indemnification provisions of the Release Agreements with DSS and IPS provide as follows:

> …Releasor releases and forever discharges Oil Mop, its officers, directors, agents and all others, of and from, any and all claims, demands, actions and causes of action for the collection of accounts receivable, open accounts, expenses, liens and privileges, and indemnity, on account of services that Releasor has previously rendered or expenses that Releasor has previously incurred… Releasor agrees to defend, protect, indemnify and hold harmless Oil Mop should third parties assert claims arising out of the matters released herein.

27

32.

At all times pertinent hereto, Subcontractor Agreements between Oil Mop and ESM, EEI, GGT, ILE, IPS and LAL were in full force and effect.  Under the terms of the Subcontractor Agreements, ESM, EEI, GGT, ILE, IPS and LAL are contractually required to defend, indemnify and hold harmless Oil Mop from and against claims such as those asserted by ACLC in its Complaint in Intervention herein.  As such, ESM, EEI, GGT, ILE, IPS and LAL are contractually obligated to defend and indemnify Oil Mop under their Subcontractor Agreements with Oil Mop.

33.

The indemnification provisions of the Subcontractor Agreements with ESM, EEI (EEI provisions slightly different but identical in terms of indemnification provided to Oil Mop), GGT, ILE, IPS and LAL provide as follows:

> Company agrees to indemnify, defend and hold harmless Oil Mop Indemnitees from and against any and all liabilities of every nature, including, without limitation, consequential, incidental and special damages, costs, claims, penalties, fines, forfeitures, causes of action, or suits and the costs and expenses incident thereto, including costs of defense, settlement and reasonable attorneys' fees, which Oil Mop Indemnitees may incur, suffer, or be responsible for due to…any violation or alleged violation of government laws, regulations or order…or by Company's breach of any term or condition of this Agreement.

34.

ACLC has filed a Complaint in Intervention against Oil Mop based on alleged violations of the law by Oil Mop and the Third-Party Defendants.  Oil Mop's Subcontractor Agreements require ESM, EEI, GGT, ILE, IPS and LAL to comply with all applicable federal, state and local laws.  Violations of such laws would be breaches of the Subcontractor Agreements.

35.

Since ESM, EEI, GGT, ILE, IPS and LAL's Subcontractor Agreements with Oil Mop require them to indemnify, defend and hold harmless Oil Mop for alleged violation of laws, (which violations would also be breaches of such agreements for which indemnification is also required), ESM, EEI, GGT, ILE, IPS and LAL should be required to indemnify, defend and hold harmless Oil Mop.

36.

Oil Mop made amicable demand upon Third-Party Defendants for defense and indemnity. Third-Party Defendants have not yet favorably responded to the requests.

37.

Accordingly, if Complaint in Intervention Defendant/Third-Party Plaintiff, Oil Mop is held liable to ACLC, which is expressly denied, Oil Mop is entitled to indemnification and/or reimbursement and/or recovery in contract from and against DSS, ESM, EEI, GGT, ILE, IPS and LAL for any judgment for which Oil Mop may be held liable to ACLC, with interest, attorney's fees, expenses and costs.

38.

Oil Mop is further entitled to reimbursement for all sums expended in the defense of this matter, as per the obligations of DSS, ESM, EEI, GGT, ILE, IPS and LAL in their Release and Subcontractor Agreements.

39.

Oil Mop is further entitled to an Order from this Court ordering DSS, ESM, EEI, GGT, ILE, IPS and LAL to honor their obligations under their agreements and to defend and indemnify Oil Mop from the claims of ACLC.

Count Four – Any Other Claims Made in Complaint in Intervention Against Oil Mop

40.

Oil Mop repeats, reiterates and incorporates herein by reference paragraph "1" through "40" of the Third-Party Complaint of Oil Mop, L.L.C. as if fully set forth herein at length.

41.

To the extent ACLC's allegations and legal theories (which are denied) are borne out against Oil Mop, Oil Mop's agreements with and payments to the Third-Party Defendants are implicated.

42.

To the extent that any other of ACLC's allegations and legal theories propounded against Oil Mop (which are denied) are borne out against Oil Mop, Oil Mop alleges that such other allegations and legal theories apply to Third-Party Defendants, because Oil Mop paid part of the amounts that ACLI and ACLC seek to Third-Party Defendants.

43.

Oil Mop reiterates and re-alleges all answers, denials, and other pleadings filed or to be filed in this lawsuit as if copied herein in extenso.

44.

Oil Mop denies ACLC's allegations, but in accordance with Rule 14(c) of the Federal Rules of Civil Procedure, demands judgment in ACLC's favor against the Third-Party Defendants.

**WHEREORE**, Complaint in Intervention Defendant, Counterclaimant and Third-Party Plaintiff, Oil Mop, L.L.C. prays:

(a)  That its answer be deemed good and sufficient, and, after due proceedings be had, that judgment be granted in its favor dismissing ACLC's Complaint in Intervention, with ACLC to bear the costs and attorney's fees incurred by Oil Mop in defending this litigation;

(b)  That its Counterclaim be deemed good and sufficient, and, after due proceedings, this Court find in favor of Oil Mop and against ACLC and award Plaintiff all amounts, including but not limited to amounts owed, damages, statutory amounts, attorney fees and costs and interest,  prayed for herein;

(c)  That its Third-Party Complaint be deemed good and sufficient;

(d)  That this Court enter a Judgment in favor of Third-Party Plaintiff, Oil Mop, and against DSS, ESM, EEI, GGT, ILE, IPS and LAL, for complete and full defense and indemnification in respect to all Complaints in Intervention asserted herein;

(c)  That Third-Party Plaintiff Oil Mop, have Judgment in its favor dismissing the Complaints in Intervention at ACLC's costs and, alternatively, should judgment in any amount be rendered against Third-Party Plaintiff, Oil Mop, that a judgment also be

rendered in favor of Oil Mop against Third-Party Defendants for the full amount of any

judgment rendered against Oil Mop, together with interest, attorney's fees, costs,

expenses and other damages to which Oil Mop is entitled; and;

(d)  That Third-Party Plaintiff, Oil Mop be granted all further relief as justice and the

nature of the case allow.


Respectfully submitted,


_____/S/ BRUCE BROWN_____
**BRUCE BROWN, T.A. (#19501)**
Of
**COLEMAN, JOHNSON, ARTIGUES &**
**JURISICH, L.L.C.**
321 St. Charles Avenue, 10th Floor
New Orleans, Louisiana 70130
Telephone: (504) 586-1979
**Counsel for Plaintiff:**
**Oil Mop, L.L.C.**


## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2011, a copy of the foregoing has been served upon counsel for all appearing parties by electronic means and filed electronically with the Clerk of Court using the CM/ECF system.


_____/S/ BRUCE BROWN_____


**Please Serve:**

American Pollution Control Corporation
Through its agent for service of process:
KIRK F. HEADLEY
401 WEST ADMIRAL DOYLE DRIVE
NEW IBERIA, LA 70560

B&B Fire and Safety Services, Inc.
Through its agent for service of process:
SCOTT BUTAUD
319 E. MILTON AVE.
LAFAYETTE, LA 70508

Dillon Environmental Services, LP
Through its agent for service of process:
Charles Fuller
119 East Main
Ringling, OK  73456

Down South Services, L.L.C.
Through its agent for service of process:
THOMAS J. REDDOCH
31432 HIGHWAY 11
BURAS, LA 70041

Eagle Supply and Manufacturing, L.P. Texas
Through its agent for service of process:
GINGER COBB
10049 INDUSTRIPLEX
GONZALES, LA 70737

Environmental Equipment, Inc.
Through its agent for service of process:
Louis O'Neil Suard, Jr.
205 Rosedown Drive
Houma, LA  70360

Greg Gibson Trucking LLC
Through its agent for service of process:
Gregory Gibson
40132 River Road
Boothville, LA  70038

Industrial Cleanup, Inc.
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge,  LA  70808

Industrial Labor and Equipment Services LLC
Through its agent for service of process:
Joseph David Futch
855 Jason Drive
Belle Chasse, LA  70037

Integrated Pro Services, LLC
Through its agent for service of process:
Tait Faulk
3201 General Degaulle Drive
Suite 209
New Orleans, LA 70114

Laville Airboats, L.L.C.
Through its agent for service of process:
Carla S. Bergeron
409 Mel Lane
St. Martinville, LA  70582

Phoenix Pollution Control & Environmental Services, Inc.
Through its agent for service of process:
Gary L. Crofford
7500 San Felipe
Ste. 700
Houston, TX  77063

PSC Industrial Outsourcing, LP
Through its agent for service of process:
Corporation Service Company
320 Somerulos Street
Baton Rouge, LA  70802