# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| OIL MOP, L.L.C. | * | CIVIL ACTION NO. |
| | * | |
|     Plaintiff, | * | SECTION " " |
| | * | JUDGE |
| VERSUS | * | |
| | * | MAG. DIV. ( ) |
| SUMMIT ENVIRONMENTAL SERVICES, | * | MAG. JUDGE |
| LLC AND AMERICAN COMMERCIAL | * | |
| LINES INC. | * | |
|     Defendants. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

**NOW INTO COURT** comes Plaintiff, Oil Mop, L.L.C., through undersigned counsel, who respectfully submits this Complaint and avers as follows:

1.

Oil Mop, L.L.C. (hereinafter "Plaintiff") is a Louisiana limited liability company with a principal place of business at 145 Keating Drive, Belle Chasse, Louisiana.

2.

On information and belief, the defendant, Summit Environmental Services, LLC (hereinafter "SESL") is an Indiana limited liability company with a principal place of business at 2125 Glenview Drive, Evansville, Indiana.

1

EXHIBIT A

3.

On information and belief, the defendant, American Commercial Lines Inc. ("ACL") is a Delaware corporation with a principal place of business at 1701 East Market Street, Jeffersonville, Indiana.

4.

The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 United States Code 1332.

5.

Pursuant to the terms of a Reciprocal Services Agreement, defendant SESL (previously Summit Environmental Services, Inc.) expressly agreed to submit to the jurisdiction of the United States District Court of the Eastern District of Louisiana for all disputes relating to said agreement. S*ee attached Exhibit "A," Reciprocal Services Agreement, Section 18.*

FACTS

6.

ACL is an umbrella organization that has transportation, manufacturing and professional services divisions.

7.

ACL conducts its operations through operating subsidiaries. S*ee attached Exhibit "B," Listing of ACL subsidiaries by ACL in Exhibit 10.1 of Form 8-K filing with Securities and Exchange Commission ("SEC") on 12/23/2010, and Listing of ACL subsidiaries by ACL in Exhibit 21.1 of Form 10-K filing with SEC for 2008 10-K.*

8.

At all pertinent times, ACL was the 100% owner of its subsidiary, ACL Professional Services Inc. (hereinafter "APS").

9.

At all pertinent times, APS (and hence ACL) was the 100% owner of its subsidiary, Summit Contracting, L.L.C.

10.

At all pertinent times, Summit Contracting, L.L.C. (and hence ACL) was the 100% owner of its subsidiary, defendant SESL.

11.

Defendant SESL is in the business of construction, environmental remediation, industrial services and 24-hour emergency spill response.

12.

Plaintiff is in the business of providing environmental services, including emergency response services, transportation services and sales of material and equipment.

13.

Plaintiff and defendant SESL entered into a Reciprocal Services Agreement (hereinafter "Agreement") to provide environmental services and materials to each other when needed. S*ee attached Exhibit "A," Reciprocal Services Agreement.*

14.

On or about July 23, 2008, a barge owned by ACL's wholly owned subsidiary American Commercial Lines, LLC collided with another vessel on the Mississippi River releasing oil into

the waterway which spread to the adjoining land (hereinafter "Incident"). The collision occurred at or around mile marker 97 of the Mississippi River.

15.

At the time of the Incident, defendant SESL was a wholly owned subsidiary of Summit Contracting, L.L.C., which was a wholly owned subsidiary of APS, which was a wholly owned subsidiary of Commercial Barge Line Company, which was a wholly owned subsidiary of defendant ACL, the ultimate owner of the barge.

16.

ACL or another of its subsidiaries tasked its subsidiary, defendant SESL, to provide environmental response services related to the Incident.

17.

Defendant SESL in turn engaged Plaintiff under the terms of their Reciprocal Services Agreement to provide environmental response services related to the Incident.

18.

Plaintiff provided environmental response services related to the Incident by remediating contamination in the river, remediating land and improvements thereon for and on behalf of defendant SESL, and by selling materials to defendant SESL for remediation related to the Incident, all of which benefited defendant ACL.

19.

The Plaintiff was also directly and separately engaged by American Commercial Barge Line, LLC, another ACL subsidiary, to perform services.

4

20.

Plaintiff regularly sent invoices for the work it performed for defendant SESL.

21.

A few of Plaintiff's invoices were paid, but the majority of the invoices were not paid.

22.

When Plaintiff inquired about its invoices, it was told that they had been sent to ACL but that ACL would not pay defendant SESL for Plaintiff's services and materials.

23.

Since defendant SESL would not pay Plaintiff's invoices, Plaintiff was forced to proceed against the Federal Oil Spill Liability Trust Fund (the "Fund") for payment of its invoices.

24.

The Fund paid all of Plaintiff's invoices that defendant SESL did not pay, except for charges on two of the invoices that amounted to $237,484.35. The $237,484.35 included $86,357.32 from Plaintiff's Invoice Number N0808-188, and $151,127.03 from Plaintiff's Invoice Number N0808-099. S*ee attached Exhibit "C," Letter from National Pollution Funds Center with attached Claim Summary, Analysis of OMI Central Supply Charges, Oil Mop Invoices, Checks to SESL, Payment Authorization forms prepared by ACL for SESL, and Total Daily Summary Sheets that deny payments of $151,127.03 and $86,357.32 to Plaintiff because ACL paid Summit these amounts.*

25.

In explanation of why the Fund would not pay the $237,484.35, the National Pollution Funds Center provided that when it was auditing the Plaintiff's invoices, it had requested and

5

reviewed certain documents from American Commercial Lines, LLC, and that it had determined that American Commercial Lines, LLC had made payment to defendant SESL's parent, Summit Contracting, L.L.C. for the $237,484.35 in question.

26.

The National Pollution Funds Center informed Plaintiff that since defendant SESL's parent Summit Contracting, L.L.C. had received payment for Plaintiff's services and materials in question (*although the checks were actually made to SESL, not Summit – See attached Exhibit C*), it could not pay Plaintiff.

27.

Although the defendant told Plaintiff that defendant SESL had not been paid by ACL for Plaintiff's services and materials in question, defendant SESL had really been paid $237,484.35 for the Plaintiff's services and materials, which SESL never paid to Plaintiff.

28.

When the Plaintiff confronted the defendant with the fact that the amount had been paid to defendant SESL, but that defendant SESL had not paid the Plaintiff, the defendant admitted that it had misapplied the funds. S*ee attached Exhibit "D," Emails between Kyle Prest and Dawn Landry.*

29.

Plaintiff demanded that defendant SESL pay it the amount that defendant SESL had received for the Plaintiff's services and materials and not paid, but defendant SESL did not pay and has knowingly and intentionally continued to refuse to pay the Plaintiff, even though SESL received the amount for the Plaintiff's services.

30.

The defendants' actions prevented the Plaintiff from being able to obtain the $237,484.35 amount from the Fund, which would have otherwise paid the money to the Plaintiff.

31.

The Plaintiff discussed matters with officer Dawn Landry ("Landry") defendant SESL's Senior Vice President and General Counsel, and made demand for the money. S*ee attached Exhibit "D," Emails between Kyle Prest and Dawn Landry.*

32.

At the time the Plaintiff made demand for the money from Landry, Landry was also the Senior Vice President and General Counsel of ACL, APS and Summit Contracting, LLC.

33.

Unbeknownst to Plaintiff, while Plaintiff was amicably seeking payment of the $237,484.35 in question, ACL and APS were finalizing a plan to sell Summit Contracting, LLC and its subsidiary defendant SESL to a third party.

34.

On or about November 30, 2009, defendant ACL through its wholly owned subsidiary, APS, did sell its 100% ownership interest in Summit Contracting, LLC (which included ownership of defendant SESL) to E & J Ventures, LLC, without providing any notice to Plaintiff. S*ee attached Exhibit "E," ACL Form 8-K dated 11/30/2009.*

35.

The terms of the purchase agreement whereby defendant APS sold its ownership of Summit Contracting, LLC to E & J Ventures, LLC ("Purchase Agreement") provide that APS

7

(and hence ACL) received $2,750,000 for the sale, as well as a promissory note in the amount of $250,000 with 5% interest, which is due on April 30, 2011. S*ee attached Exhibit "F," Pages 1 and 2 of purchase agreement in ACL Form 8-K.*

36.

The terms of the Purchase Agreement also provided that APS would receive 70% of the "retainage" due on existing customer contracts (estimated to be approximately $2.2 million) as it is paid to Summit Contracting, LLC, as consideration for the sale. S*ee attached Exhibit "E," ACL Form 8-K dated 11/30/2009.*

37.

In the Purchase Agreement, at section 14(e), APS agreed to provide indemnity and to assume the defense of third party claims (*such as this one*) related to payment of "receivables" arising out of clean-up activities performed at the request of defendant SESL related to the July 23, 2008 collision incident at Mile Marker 97 of the Mississippi River (the Incident), provided that, upon any settlement by APS, defendant SESL would release, waive and discharge its corresponding receivable related to such claim. S*ee attached Exhibit "F," Pages 32 and 33 of purchase agreement in ACL Form 8-K.*

38.

The Purchase Agreement further provides that to the extent that APS makes a payment directly to defendant SESL which relates to a "payable" arising out of the July 23, 2008 collision, defendant SESL shall immediately use such payment to satisfy the corresponding payment. S*ee attached Exhibit "F," Page 33 of purchase agreement in ACL Form 8-K.*

8

39.

The Plaintiff's claim in this proceeding arises out of clean-up activities related to the July 23, 2008 collision incident at Mile Marker 97 of the Mississippi River (the Incident), and is the type of claim, if not the specific claim, that the defendants addressed in their Purchase Agreement, as explained above.

40.

The defendants were aware of their obligation to the Plaintiff when the Purchase Agreement was executed and made allowances for the payment of the obligation in the Purchase Agreement.

41.

The Plaintiff's $237,484.35 claim is a "payable" arising out of the July 23, 2008 collision, and the $250,000 promissory note that is due to ACL on April 30, 2011 by the purchaser of SESL appears to be related to the Plaintiff's claim.

COUNT I

SINGLE BUSINESS ENTERPRISE

42.

Plaintiff repeats, reiterates and incorporates Paragraphs 1 through 41 of the Complaint as if set forth herein at length.

43.

In addition, upon information and belief, at the date of the Incident and until at least November 30, 2009, defendant SESL and defendant ACL were under common control and acted

in an indistinguishable manner reflected in the way they integrated their resources to achieve a common business purpose.

44.

Upon information and belief, the commonalities shared by such entities were such that they acted as alter egos of one another to the extent that day-to-day activities of each company revealed actions befitting a single business entity/enterprise in pursuit of precisely the same single interest.

45.

When Dawn Landry refused to pay the Plaintiff the money that defendant SESL misapplied, she was simultaneously acting for defendant ACL, APS, Summit Contracting, LLC and defendant SESL.

46.

As such, Plaintiff specifically alleges that defendant ACL, APS, Summit Contracting, LLC and defendant SESL constituted a single business enterprise or were alter egos as first recognized in *Green v. Champion Ins. Co., 577 So.2d 249, 257-259 (La.App. 1st Cir.), writ denied, 580 So.2d 668 (La.1991)*. Accordingly, they should be considered one entity and should be held liable jointly and in solido for the amount owed to and damages sustained by Plaintiff.

47.

ACL and its subsidiaries had common officers and the same officers acted on behalf of ACL and multiple subsidiaries at the same time. S*ee attached Exhibit "E," ACL Form 8-K dated 11/30/2009, and attached Exhibit "F," Page 37 of purchase agreement in ACL Form 8-K.*

10

48.

ACL and its subsidiaries further directed the Plaintiff to disregard their corporate separateness, by directing it to submit its invoices for services to Summit Contracting, L.L.C. instead of to SESL.

COUNT II

BREACH OF CONTRACT

49.

Plaintiff repeats, reiterates and incorporates Paragraphs 1 through 48 of the Complaint as if set forth herein at length.

50.

Since SESL and ACL were members of a single business enterprise until at least November 30, 2009, all references to one or the other herein are intended to include both, if appropriate.

51.

From on or about July 27, 2008 through December 2008 Plaintiff performed environmental services for defendant SESL and sold materials to defendant SESL related to the Incident (hereinafter "Services") pursuant to a contract (the Agreement) between them. S*ee attached Exhibit "A."*

52.

The Services rendered to defendant SESL, and materials sold, are more particularly outlined in those invoices submitted for payment. S*ee attached Exhibit "C."*

11

53.

In executing the Agreement, defendant SESL agreed to pay Plaintiff for services rendered by Plaintiff to defendant SESL in accordance with the payment terms set forth in the Agreement. S*ee attached Exhibit "A," section 15*.

54.

In executing the Agreement, defendant SESL agreed to pay Plaintiff interest at a rate of 1.5% per month on all overdue amounts, but defendant SESL has failed and refused to pay the accrued interest. S*ee attached Exhibit "A," section 15*.

55.

In executing the Agreement, defendant SESL agreed to pay Plaintiff for all costs of collection, including reasonable attorney's fees, but defendant SESL has failed and refused to pay these items. S*ee attached Exhibit "A," section 15*.

56.

The Plaintiff has performed in accordance with its agreement with defendant SESL and satisfied all conditions precedent.

57.

Despite Plaintiff's repeated demands, and despite the fact that defendant SESL has already been paid for the Plaintiff's services, defendant SESL has failed and refused to pay in full the amounts owed to Plaintiff.

58.

Defendant SESL has breached its contract with Plaintiff.

59.

Defendant SESL has failed and refused to cure its breach of the contract.

60.

As a result of defendant SESL's breach of its contract with Plaintiff, Plaintiff has suffered damages and will continue to suffer damages.

61.

Plaintiff should be awarded $237,484.35 plus interest at a rate of 1.5% per month, plus attorney fees and costs.

## COUNT III

## QUANTUM MERUIT & UNJUST ENRICHMENT

62.

Plaintiff repeats, reiterates and incorporates Paragraph 1 through 61 of the Complaint as if set forth herein at length.

63.

The Services and materials provided by Plaintiff were provided at the specific request and knowledge of defendant SESL and defendant ACL.

64.

Defendant SESL and defendant ACL accepted and used the Services and materials provided by Plaintiff.

65.

The Plaintiff is entitled to the payment of the fair and reasonable value of the Services and materials it provided to defendant SESL and ACL.

13

66.

The fair and reasonable value of the Services and materials provided by Plaintiff but not paid for by defendant SESL or defendant ACL is $237,484.35 excluding interest, costs and attorney fees.

67.

Defendant SESL and defendant ACL have been unjustly enriched by having received the benefit of the Services and materials of the Plaintiff while not paying the fair and reasonable amount for these Services and materials.

68.

Defendant ACL (through APS) has been unjustly enriched by receiving a purchase price for the sale of Summit Contracting, L.L.C. (which included SESL) that was inflated by $237,484.35, the amount that ACL shifted to SESL before the sale (thereby increasing the value of SESL by $237,484.35), but which SESL did not pay to the Plaintiff.

69.

As a result of defendant SESL and defendant ACL's failure to pay for services and materials provided, and as a result of ACL's receipt of an unjustly inflated purchase price, Plaintiff has suffered damages and will continue to suffer damages.

70.

Plaintiff should be awarded $237,484.35 plus interest at a rate of 1.5% per month, plus attorney fees and costs.

14

**WHEREORE**, the Plaintiff prays that:

1. This Complaint be deemed good and sufficient;

2. After due proceedings, this Court find in favor of Plaintiff and against defendants Summit Environmental Services LLC and American Commercial Lines Inc. and award Plaintiff all amounts, including but not limited to amounts owed, damages, statutory amounts, attorney fees and costs and interest, prayed for herein, and:

3. Plaintiff be granted all further relief as justice and the nature of the case allow.

Respectfully submitted,

    /S/ BRUCE BROWN
**BRUCE BROWN, T.A. (#19501)**
    Of
**COLEMAN, JOHNSON, ARTIGUES & JURISICH, L.L.C.**
321 St. Charles Avenue, 10th Floor
New Orleans, Louisiana 70130
Telephone: (504) 586-1979
Email: Lanebrown@cjajlaw.com
**Counsel for Plaintiff:**
**Oil Mop, L.L.C.**

**Please Serve:**

Summit Environmental Services LLC
through C T Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

American Commercial Lines Inc.
through The Corporation Trust Company
The Corporation Trust Center 1209 Orange Street
Wilmington, Delaware 19801

15