# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **OIL MOP LLC** | * | **CIVIL ACTION** |
| | * | |
| **versus** | * | **No. 11-89** |
| | * | |
| **SUMMIT ENVIRONMENTAL SERVICES, LLC, ET AL.** | * | **SECTION "L" (3)** |

## ORDER & REASONS

Before the Court is a Motion for Summary Judgment filed by Plaintiff Oil Mop, LLC ("Oil Mop"). (Rec. Doc. 180). The Court has reviewed the briefs and applicable law and, after holding two hearings on the motion, now issues this Order & Reasons.

### I.  BACKGROUND

This case arises out of an oil spill that occurred on the Mississippi River during the early morning hours of July 23, 2008, when a barge owned by American Commercial Lines, LLC ("ACL-LLC") collided with the vessel M/V TINTOMARA. Plaintiff Oil Mop was one of the companies involved in the cleanup of the spill. Oil Mop filed suit in this Court, alleging that it entered into a Reciprocal Services Agreement with Defendant Summit Environmental Services, LLC ("Summit") to provide environmental services and materials to each other when needed. (Rec. Doc. 1 at 3). Oil Mop claims that after the spill, Defendant American Commercial Lines, Inc. ("ACL-INC") tasked Summit with providing environmental response services. (Rec. Doc. 1 at 4). Summit organized an operation known as "Central Supply," through which all of the Oil Spill Response Organizations ("OSROs") provided necessary supplies and materials for oil spill cleanup. (Rec. Doc. 1 at 4). Oil Mop claims that it was hired to assist in this operation, pursuant to the Reciprocal Service Agreement with Summit. Oil Mop also performed cleanup operations related to the spill. (Rec. Doc. 204-1 at 4). ACL-LLC directed all of the OSROs to submit their

1

invoices for Central Supply to Summit Contracting L.L.C. ("Summit Contracting").[1] (Rec. Doc. 204 at 4). Oil Mop claims that it regularly sent invoices for the work it performed to Summit Contracting, however, some of the invoices were not paid. (Rec. Doc. 1 at 5). Oil Mop explains that, pursuant the Oil Pollution Act ("OPA"), it proceeded against the Federal Oil Spill Liability Trust Fund ("the Fund") for payment of its invoices. (Rec. Doc. 1 at 5). According to Oil Mop, the Fund paid almost all of the invoices, but refused to pay for charges on two invoices that amounted to $237,484.35 total. Oil Mop claims that the Fund's explanation for this non-payment was that it reviewed documents from ACL-LLC, the designated "responsible party," which indicated that ACL-LLC had made payments to Summit for the services in question, in the amount of $237,484.35. (Rec. Doc. 1 at 6). Oil Mop claims that Summit misapplied these funds, instead of giving the money to Oil Mop. (Rec. Doc. 1 at 6). Oil Mop is seeking the value of these unpaid services and materials that it allegedly provided to the Defendants, as well as costs and attorneys' fees. Oil Mop claims that at all pertinent times Defendant Summit and Defendant ACL-INC constituted a "single business enterprise," rendering both companies liable.[2]

Defendants have filed answers denying Oil Mop's allegations and also denying the existence of any contract between Oil Mop and Summit and Oil Mop and ACL-INC. ACL-LLC filed a complaint in intervention, alleging that it was the party that contracted with Oil Mop. Defendants and ACL-LLC (hereinafter "Defendants") also filed counterclaims against Oil Mop,

---

[1] Summit was wholly owned by Summit Contracting. (Rec. Doc. 204-1 at 4).
[2] Plaintiffs allege that, at the time of the spill, the Defendant companies wholly owned each other in the following chain of ownership: American Commercial Lines, Inc.; American Commercial Lines, LLC; American Commercial Barge Line, LLC; Commercial Barge Line Company; ACL Professional Services, Inc.; Summit Contracting L.L.C.; Summit Environmental

alleging that Oil Mop has been overpaid and that Oil Mop owes ACL-LLC amounts paid to Oil Mop by the Fund, for which the Fund has demanded reimbursement from ACL-LLC.

In response to the counterclaim, Oil Mop filed complaints against numerous third parties, consisting of the sub-contractors with which Oil Mop contracted during the oil spill cleanup. On March 2, 2012, the Court stayed all third-party claims and continued the trial without date.

## II. SUMMARY OF MOTION AND OPPOSITION

On October 15, 2012, Oil Mop moved for summary judgment in its favor, seeking: (1) $237,484.35, the amount owed for unpaid invoices, plus interest and attorneys' fees; and (2) dismissal of all counterclaims against it with prejudice and at counter-claimants' cost. Oil Mop argues that Defendants have acknowledged their indebtedness to Oil Mop and that the record reflects that Oil Mop's invoices were paid by ACL-LLC to Summit. Accordingly, Oil Mop argues that it is entitled to be compensated for those invoices. With regard to the counterclaims, Oil Mop argues that the Oil Pollution Act ("OPA") pre-empts these claims, which may properly be asserted as affirmative defenses in the principal action brought by the United States against ACL-LLC.

On December 12, 2012, this Court heard oral argument on Oil Mop's motion for summary judgment. The Court subsequently stayed this matter pending an appeal to the United States Court of Appeals for the Fifth Circuit in a related case entitled *United States of America v. American Commercial Lines, LLC*. (Case No. 11-2076). The Fifth Circuit has now issued its opinion and the parties in the present case have had an opportunity to brief and argue the effect of that opinion on the issues in the present case. This Court is now ready to rule on Oil Mop's

---

Services, LLC. Plaintiffs further allege that all of these companies shared officers. Defendants dispute that ACL-INC "directly owns" ACL-LLC.

Motion for Summary Judgment.

## A. Relevant Recent Developments in the Related Proceedings

To put this matter in perspective it is helpful to review the background of the *American Commercial Lines* case which arose out of the same oil spill as the present case. Following the oil spill on July 23, 2008, ACL-LLC entered into contracts with two other OSROs, in addition to Oil Mop, to provide cleanup services—Environmental Safety and Health Consulting Services, Inc. ("ES&H") and United States Environmental Services, LLC ("USES"). (Case No. 11-2076; Rec. Doc. 86 at 2). When ACL-LLC failed to settle or pay cleanup costs to these companies within 90 days, as mandated by OPA, the United States paid the costs out of the Fund. Subsequently, the United States filed a lawsuit against ACL-LLC to recover those costs. ACL-LLC claimed that ES&H and USES failed to provide adequate documentation for the amount billed to and paid out of the Fund and that the Fund overpaid those companies. ACL-LLC tried to tender ES&H and USES as third-party defendants or, in the alternative, sought to hold them directly liable to the extent that ACL-LLC was found liable to the United States.

The District Court in *American Commercial Lines* held that OPA preempts the general maritime claims that ACL-LLC sought to assert against ES&H and USES. Therefore, the Court dismissed the third-party complaints against those companies. ACL-LLC appealed this decision. On July 16, 2014, the Fifth Circuit affirmed the District Court. *See United States of America v. American Commercial Lines, L.L.C.*, No. 13-30358; 2014 WL 3511882 (5th Cir. July 16, 2014). The Fifth Circuit found that OPA provides the exclusive source of law for an action involving a responsible party's liability for oil spill cleanup costs governed by OPA. The Fifth Circuit explained that because of this, ACL-LLC does not have a cause of action against the spill responders who exercised their statutory right to file claims with the Fund after ACL-LLC failed

to timely pay their claims.  *See id.* at *3.  The Fifth Circuit did note, however, that:

> While we find that OPA displaces ACL's alternative causes of action against ES&H and USES, we note that both ACL and the United States contemplate that ACL may raise its contentions in the district court in defense to the United States' OPA recoupment action.  Should ACL establish that the Fund's payments to ES&H and USES were unnecessary, unreasonable, or not in compliance with the relevant statutory criteria for Fund payments and hence were "arbitrary and capricious," it may pursue reduction of its liability to the Fund for reimbursement.

*Id.* at *4.

In the present case, Defendants oppose Oil Mop's Motion and have provided a supplemental brief elaborating on their opposition in light of the Fifth Circuit's recent opinion. (Rec. Docs. 202, 240).  First, Defendants argue that pursuant to the Fifth Circuit's opinion, Oil Mop lacks standing to pursue recovery for the invoices in question.  Defendants claim that when the United States partially paid Oil Mop's claim, the United States acquired, by subrogation, all of the rights of Oil Mop for that claim.  Defendants argue that when Oil Mop accepted those payments, it became precluded from filing any subsequent action against any person to recover the costs or damages which are the subject of the compensated claim. (Rec. Doc. 240 at 7).

Second, Defendants claim that an important distinction exists between the present case and *American Commercial Lines*.  Defendant points out that in that case, the OSROs were not seeking any additional recovery from ACL-LLC or any other party.  Here, however, Oil Mop is seeking additional recovery.  Defendants argue that, pursuant to admiralty law, they should be entitled to equitable set-off or recoupment of Oil Mop's claim.  Defendants argue that while they may not be able to seek an affirmative claim for recovery against Oil Mop, they should be able to assert a claim that Oil Mop has been overpaid by the Fund as a way to reduce any recovery that Oil Mop would receive in the present lawsuit.

Last, Defendants argue that Oil Mop's motion for summary judgment should be denied because Oil Mop has failed to establish a breach of contract claim against Summit. Defendants argue that Oil Mop cannot establish the existence of a governing contract. In the alternative, Defendants argue that if Oil Mop succeeds in proving the existence of a contract, its claim for unjust enrichment should be barred. Defendants ask the Court to deny the motion, or at least continue it, to allow time to complete additional discovery.

### III. LAW & ANALYSIS

#### A. Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

#### B. Standing

The Court finds that Oil Mop has standing to bring the present lawsuit. As the Fifth Circuit pointed out recently, in *American Commercial Lines*, "[p]ayment of any claim or obligation by the Fund' results in 'the United States Government acquiring by subrogation all rights of the claimant . . . to recover from the responsible party.'" *American Commercial Lines*, 2014 WL 3511882 at *1 (quoting 33 U.S.C. § 2712(f)). 33 C.F.R. § 136.115(a) provides that "[a]cceptance of any compensation . . . constitutes an agreement by the claimant to assign to the Fund any rights, claims, and causes of action the claimant has against any person for the costs and damages *which are the subject of the compensated claims* . . . ." (emphasis added). To determine what the "compensated claim" was in this case, the Court turns to the documents that the Fund sent to Oil Mop regarding the settlement of its claim. (Rec. Doc. 180-13 at 35-38). On March 4, 2010, the Fund sent a letter to Oil Mop stating that it had determined that "$275,942.79 is compensable for OPA claim number N08057-016." (Rec. Doc. 180-13 at 35). Claim Number N08057-016 was a claim for removal costs made by Oil Mop to the Fund in the amount of $517,554.40. (Rec. Doc. 180-13 at 37). The Fund denied $241,611.61 worth of costs. (Rec. Doc. 180-13 at 41). The Fund stated that it "denied some claimed costs of [Oil Mop] for lack of documentation." (Rec. Doc. 180-13 at 39). However, $237,484.35 worth of claimed costs were denied because the Fund determined, after examining the audit performed by ACL-LLC's audit team, that ACL-LLC had already paid this amount for Oil Mop's invoices to Summit, the prime contractor of the Central Supply Station. (Rec. Doc. 180-13 at 37).

The Acceptance/Release Form that Oil Mop's representative signed with respect to this claim stated "I, the undersigned, ACCEPT the determination of $275,942.79 as full compensation for the removal costs incurred by the Claimant that are listed in the ACL/NPFC Audit . . ." (Rec. Doc. 180-13 at 36). Turning to the referenced Audit, the Fund explained its

7

evaluation of Oil Mop's claim and stated that "ACL also approved and paid Summit Contracting for some of the costs encompassed in this claim which the NPFC s denying because ACL has demonstrated payment was made to Summit Contracting which leaves [Oil Mop] *with an issue for non-payment by Summit*." (Rec. Doc. 180-13 at 38) (emphasis added). The Fund obtained this information from the audit that ACL-LLC's audit team conducted.

The language in the statute and the C.F.R., referring to "compensated claims," coupled with the Fund's explanation of its partial denial of Oil Mop's claim, support the conclusion that Oil Mop did not assign its claim for $237,484.35 to the Fund. This is further supported by the Fund's express reservation of Oil Mop's right to pursue that amount from Summit. This amount was denied because the Fund determined that the responsible party had already paid it. The Fund did not compensate Oil Mop, in whole or in part, for this claimed amount and Oil Mop did not assign its right to this amount to the Fund.

**C. Recoupment**

The parties do not dispute the fact that Defendants' counterclaims against Oil Mop should be dismissed in light of the Fifth Circuit's recent opinion in *American Commercial Lines*. 2014 WL 3511882. The Defendants argue, however, that they should still be able to raise the claim that Oil Mop was overpaid by the Fund as a defense against Oil Mop in this action. The Defendants argue that any recovery to Oil Mop in this proceeding should be subject to a set-off, or recoupment, based on the amount that Oil Mop has already been overpaid by the Fund.

This argument does not withstand the Fifth Circuit's reasoning in *American Commercial Lines*. For the same reason that ACL-LLC does not have a cause of action against spill responders who have made claims to the Fund, ACL-LLC cannot use those claims to the Fund to decrease its liability in a completely separate lawsuit involving that same spill responder. The

8

present lawsuit involves two claims by Oil Mop that were not compensated by the Fund. The fact that Oil Mop was allegedly overcompensated for *other* claims, which were compensated by the Fund, is irrelevant. Just like the District Court and Fifth Circuit found in *American Commercial Lines,* if ACL-LLC were allowed to assert this defense, it would "avoid the strict liability that OPA places on responsible parties to pay the cleanup and removal costs" and "would frustrate the remedial scheme of OPA, which is to encourage rapid cleanup in the wake of an oil spill." (Case No. 11-2076; Rec. Doc. 86). The Fifth Circuit explicitly provided that the proper forum for ACL-LLC's claims regarding overpayment to OSROs is in the action that was brought by the United States for recoupment of payments made out of the Fund. ACL-LLC can pursue reduction of its liability to the United States if the Fund's payments to Oil Mop were "unnecessary, unreasonable, or not in compliance with the relevant statutory criteria for Fund payments . . . ." *American Commercial Lines*, 2014 WL 3511882 at *4. It would be wholly inconsistent with the Fifth Circuit's opinion for this Court to allow ACL-LLC to use the Fund's alleged overpayment of claims that are the subject of that lawsuit to decrease its liability in the present lawsuit. If ACL-LLC were allowed to make such a set-off claim pursuant to admiralty law, it would essentially be able to recover, through the reduction of liability, twice for the same overpayment—once in the present lawsuit and once in the lawsuit brought by the United States. Such double recovery would be inconsistent with the statutory scheme created in OPA, which "provides the *exclusive source of law* for an action involving a responsible party's liability for removal costs governed by OPA." *American Commercial Lines*, 2014 WL 3511882 at *3 (emphasis added).

Finally, for the same reasons stated by the Fifth Circuit, OPA's savings clause does not change this determination. *See American Commercial Lines*, 2014 WL 3511882 at *4. The

savings clause provides that "[e]xcept as otherwise provided in this Act, this Act does not affect . . . admiralty and maritime law . . . ." 33 U.S.C. § 2751(e). The Fifth Circuit explained that "OPA provides a procedure for submission, consideration, and payment of cleanup expenses by the Fund when the responsible party fails to settle such claims within 90 days." *Id.* Because OPA did "otherwise provide[]," ACL-LLC's defense against Oil Mop to recover for payments made by the Fund, through decreased liability, cannot be saved by this clause. *See id.* ("As OPA did 'otherwise provide[ ],' ACL's claim against ES&H and USES for return of payments made by the Fund under OPA cannot be saved by this clause."). Accordingly, the Court finds that ACL-LLC and the Defendants cannot claim that Oil Mop was overpaid for other invoices in order to set-off Oil Mop's recovery in this action. Consistent with this holding, the Court finds that no additional discovery is necessary regarding the payments, and alleged overpayments, made by the Fund.

### D. Summary Judgment

Having dismissed the counterclaims and the set-off defense, the Court now examines Oil Mop's primary claim against Summit and ACL-INC. The Court finds that there are no material facts in dispute regarding Summit's debt to Oil Mop in the amount of $237,484.35. As part of the oil spill cleanup efforts, Oil Mop was asked to assist in the Central Supply operation. As the Fund explained in its Claim Summary/Determination Form, "Summit Contracting served as a prime contractor of the central supply station for [the oil spill] and Oil Mop provided personnel and equipment to run the station." (Rec. Doc. 180-13 at 37). ACL-LLC admits that it directed all of the OSROs to submit their invoices for Central Supply to Summit Contracting. (Rec. Doc. 204 at 4). Summit Contracting would receive invoices from the OSROs and would submit them to ACL-LLC and ACL-LLC would pay Summit for these invoices. (Rec. Doc. 204-1 at 6-7).

Defendants admit that "ACL[-LLC] paid $151,127.03 attributable to Oil Mop invoice #N0808-099 to [Summit]" and that Summit "did not pay the $151,127.03 received from ACL[-LLC] for Oil Mop invoice #N0808-099 to Oil Mop." (Rec. Doc. 204-1 at 10-11). Similarly, Defendants admit that ACL-LLC "paid $86,357.32 attributable to Oil Mop invoice # N0808-188 to [Summit]" and that Summit "did not pay the $86,357.32 received from ACL[-LLC] for Oil Mop invoice # N0808-188 to Oil Mop." (Rec. Doc. 204-1 at 12). These invoices pertained to Oil Mop's Central Supply services. Defendants further admit that the Fund would not pay $237,484.35 (151,127.03 + $86,357.32) to Oil Mop because that amount had already been paid by ACL-LLC to Summit. (Rec. Doc. 204-1 at 9).

Defendants argue that material facts remain in dispute regarding which contract governed the work that Oil Mop performed. Oil Mop claims that its Central Supply services were performed pursuant to a Reciprocal Service Agreement between it and Summit. Defendants claim that the services were performed pursuant to a Master Service Agreement that Oil Mop entered into, which had been assigned to ACL-LLC. (Rec. Doc. 204-2 at 8). This fact is immaterial.

Assuming, as Defendants claim, that Oil Mop's services were performed pursuant to its contract with ACL-LLC, this does not change the fact that Summit owes Oil Mop $237,484.35. Article 2298 of the Louisiana Civil Code, entitled "Enrichment without cause; compensation," codifies Louisiana's doctrine of unjust enrichment. Article 2298 provides that "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person." A party must prove five elements to succeed on a claim of unjust enrichment: "(1) defendant's enrichment; (2) plaintiff's impoverishment; (3) a causal relationship between the enrichment and resulting impoverishment; (4) an absence of justification or legal cause for the

enrichment and impoverishment; (5) no other remedy at law." *Gegenheimer v. Cajun Painting, Inc.*, 689 So.2d 457, 462 (La. App. 3 Cir. 10/9/96). The Court finds that these five elements have been met in the present case. Summit received $237,484.35 from ACL-LLC for work that Oil Mop performed and did not pay this amount to Oil Mop. Oil Mop was clearly impoverished by Summit's decision not to pay this amount to Oil Mop. Not only did Oil Mop not receive the requested funds, but Oil Mop was also precluded from recovering this amount from the Fund because of Summit's receipt of it. Defendants can point to no justification for Summit's non-payment. In fact, the Defendants' given justification for the non-payment is that Summit ceased to make payments to Oil Mop for Central Supply invoices when ACL-LLC learned that Oil Mop had filed a claim with the Fund "in order to avoid the risk of double payments" to Oil Mop. (Rec. Doc. 204 at 6). However, since the Fund denied this amount, such a risk no longer exists. Last, if no governing contract existed between Summit and Oil Mop, as Defendants claim and the Court now assumes, then the doctrine of unjust enrichment would be the only remedy at law, as well as the most appropriate in this factual circumstance.

Defendants focus most of their attention on extraneous facts regarding the Fund's overpayment to Oil Mop for different invoices. All of the other material facts that Defendants list as being still in dispute pertain to the Fund's payments to Oil Mop and whether those payments were appropriate. (Rec. Doc. 204-1 at 17-20). However, the Court has already explained that this is irrelevant for the purposes of the present lawsuit. Accordingly, the Court finds that there are no material issues of fact in dispute that would affect the outcome of the present lawsuit. All that is before the Court is the two Oil Mop invoices totaling $237,484.35. There is undisputed evidence in the record indicating that Summit owes this money to Oil Mop. Accordingly, Oil Mop's Motion for Summary Judgment is granted as to Summit.

The Court agrees with Defendants that Oil Mop has not sufficiently established that Summit, ACL-INC and ACL-LLC should be treated as a single business enterprise. However, the Court does not find this material. Summit is liable to Oil Mop for $237,484.35. Any arrangement that ACL-INC and/or ACL-LLC have with Summit regarding indemnification can be worked out between those companies.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion for Summary Judgment (Rec. Doc. 180) is hereby **GRANTED.** Defendants' and Intervenor's counterclaims are dismissed. Summit is ordered to pay $237,484.35 to Oil Mop plus costs. Because OPA does not provide for the payment of attorneys' fees in claims of this sort, the Court declines to award such payment.

**IT IS FURTHER ORDERED** that Oil Mop's claims against all third parties, which relate to the Defendants' counterclaims, are hereby **DISMISSED.**

**IT IS FURTHER ORDERED** that the Motions to Dismiss filed by Third-party Defendant's (Rec. Docs. 78, 121) are **DENIED** as moot.

New Orleans, Louisiana, this 25th day of August 2014.

_____
UNITED STATES DISTRICT JUDGE